Okay, our fourth case for argument today is United States v. Feeney, number 22-2607. And we're waiting for Mr. Rosenblum, is he on? Okay, come on up Ms. Christensen, whenever you're ready. Thank you, Your Honor. Please, the court, counsel. My name is Joanna Christensen, and I represent the appellant, John Feeney. Any increase in the offense level is an enhancement, and in this case, the Application Note 4 prohibits any increase in the offense levels under 2K2.1. Does that mean that the first sentence of Application Note 4 is totally irrelevant and meaningless? No. How so? Because if you read all of Application Note 4, it refers to enhancement over and over and over again. And the examples it gives is specific offense characteristic, and of course, enhancement is broader. Well, I guess it's your position that when you look in the second sentence, weapon enhancement, enhancement is broader than specific offense characteristic, which would make the first sentence of Application Note 4 meaningless. I think they exist together. I think that specific offense characteristic means one thing in the guidelines, right? And those are usually subsection B enhancements to the base offense level. And then enhancement is broader, and then I think because the Sentencing Commission has continually changed this amendment to make it broader each time, and that first sentence has remained somewhat the same, and then adding all the enhancements, and I think enhancement is mentioned eight or nine times. So the Sentencing Commission just screwed up. They should have changed the first sentence. I'm not sure they screwed up. I think they both coexist together, is that in most situations, specific offense characteristics are what we're going to be talking about in the robbery guideline and the drug guideline. Any of those cases, if you use an explosive and get an 844-H, that's going to kick out those subsection B. But it would be a weird way to write, wouldn't it? I mean, if the first sentence said, do not eat apples, period, and then the next sentence said, do not eat fruit, that would be weird because an apple is a fruit. You would expect it says, do not eat apples, comma, or do not eat fruit, comma, including apples. Sure. I mean, I think that's an odd way to write it, but I think the commission, you know, major bulk of guidelines and makes changes perhaps that are not necessarily, as we come at it years later, makes sense. But these two coexist together. In your example, don't eat apples and don't eat fruit, coexist together. And perhaps we're not thinking of the specific guideline, the 2K2.1, which is an odd guideline, if you look at it in comparison to most other guidelines. It's got this list of base offense levels, some of which are based on criminal history, and those are obviously not ones that we're addressing here. That's not the type of enhancement that's covered by relevant conduct. That's a different analysis. But all of these that involve relevant conduct necessarily are enhancements to the base offense level. And this court has held that the amendment to, through the amendment, that that application note should be construed very broadly and to mean that 844H takes into account fully the explosives nature of the offense. In our case, they're all together. You know, the firearm is in a bag with various things and three explosive devices. So it's all part of the same conduct. If Mr. Feeney, for example, had robbed a bank with this duffel bag, he could not receive any enhancements for the explosives or the firearm if he had also been convicted under 844H. We see this more often in 924C situations. And in those cases, such as Foster and Tinsley, we see how this application note works and how it should be construed very broadly. The other component of this, of course, is double counting. And the guidelines have specifically said that they're amending this application note to avoid duplicative punishment. The background says double counting. And that's what we have here. We have someone who has a mandatory 10-year sentence that has to be consecutive to any other sentence. And then he's also getting a higher sentence on that underlying offense based on the explosives that are accounted for by 844H. That's the type of double counting that the Sentencing Commission specifically has told us. It is something that the court should watch out for and not impose those enhancements. I don't think that based on where the enhancement is in the guideline, our analysis should change because of the nature of the 2K2.1 guideline is different from all others. Can you think of other examples in the guidelines in which there's an enhancement that you couldn't just as easily call a specific offense characteristic? Obviously, the one we're looking at is the manipulation of the base offense level. Does that happen anywhere else? Is this unique? Not that's based on relevant conduct. I know that there are some, like the fraud guideline has, depending on which statute you're convicted under, you get a different base offense level. The money laundering guideline has a similar structure as well. But this is the only one that I'm aware of that uses relevant conduct to change the base offense level. And if it had just been written differently, the base offense level is X, add three levels, if it also included this conduct, that would take it right back into being a specific offense characteristic. Right, right. And it's hard to know exactly why subsection A of 2K2.1 was written that way, because you have this combination of criminal history. Obviously, people who have criminal history are more serious and more likely to re-offend, and so the guideline gets higher. But then you also have kind of this added on to the base offense level. I think that because of that, that's why Application Note 4 has been construed so broadly by this court and other courts, is that they are trying to prevent the double counting. And, again, we see this in 924C situations all the time, where if you get a 924C, the underlying conduct doesn't get enhanced for the 924C conduct. And that's the same thing. We don't see 844H very often, at least I certainly haven't in my history, but it's the same concept. He would not have gotten an enhancement for that explosive if he had committed a bank robbery, if he had dealt drugs using that bomb. Is there any way to find a little space between the first sentence, getting back to Judge Kirsch's first question, between the first sentence of this little part that refers to specific offense characteristics and then the last clause including any such enhancement that would apply based on relevant conduct under 1B1.3, because there could have been an ambiguity about whether relevant conduct mattered. We don't like to see superfluous things in statutes and guidelines and anything else, but I wonder if that allusion to relevant conduct gets you part of the way toward a solution that's not superfluous. Well, I think based on the way the application note was amended, that relevant conduct was to address the problems that circuit courts were having applying this application note. And so it's really to make absolutely clear that this encompasses everything, and that's what the guideline seems to say, is this fully accounts for the conduct that is the explosive. Not just offense characteristics, but also relevant conduct, I guess. Right, and everything is relevant conduct to the 2K analysis here. So that actually enhances our argument. I think that it's the most common sense way of applying this application note. And getting back to Judge Wood's comment about the equivalency of increasing base levels based upon particular characteristics and specific offense characteristics, it seems to me that Note 2 of Section 1B1.2 talks about this a little bit, where it says where there's more than one base offense level within a particular guideline, which is what we have here, the determination of the applicable base level is treated in the same manner as a determination of a specific offense characteristic. So it seems to me that reading these two together, that Note 2 of 1B1.2b also supports the notion that when you have different base levels and you're trying to use relevant conduct to figure out where you are, that you're basically doing the same thing as when you're using specific offense characteristics. I think so, and I'm not sure I caught the 1B, that portion of it, but I would agree. It's essentially the same action we're doing. The words are different, the terms of art are different, but they're all enhancements. It strikes me as a little odd that the title of the note is Weapon Enhancement, and then the first sentence talks about specific offense characteristic. It's weird, isn't it? And then when it refers to specific offense characteristics throughout the application note, it calls them enhancements. But nowhere does it talk about enhancements in the base offense level. There's no examples that it gives where it refers to enhancement under the base offense level. So why shouldn't we just read this as the sentencing guideline using enhancement synonymously with specific offense characteristics? They tell us that's what they mean. Why shouldn't we just take them at their word? Well, I'm not sure that that's what they're telling us that they mean by that. I think they're acknowledging that there are different ways to enhance an offense level. Where is the other way in this application note? That's what I'm saying. Specifically, what words in the application note tell us that enhancement means more than specific offense characteristic without us getting creative and reading it in? What words? Well, I think the continued use of the word enhancement says, but I'm not sure. Is that it? I'm not sure it says in the application note, but I think in the way we apply the guidelines and understand specific offense characteristics and enhancements. But why wouldn't they give us one single example of a base offense level? Why are the only examples they give us specific offense characteristics? Well, I think that's probably the way this came about is that it was meant to address 924C situations, which were occurring primarily in robbery cases, in Hobbs Act or bank robbery cases. And I think that's where you see the examples that they give you, and that this situation is so unusual the Sentencing Commission maybe didn't contemplate it. It's so unusual that I have no case law specifically on point with 844 and 2K2.1. So I think it's just a matter of the Sentencing Commission cannot possibly anticipate all scenarios. But using the word enhancement, which is broader than specific offense characteristic, indicates that it should be applied broadly. Okay, we'll give you some time on review. Okay, thank you, Your Honor. Okay, Mr. Rosenblum. Can you hear us okay? I can hear you. Can you hear me, Your Honor? Yep, yep. Excellent. Thank you, Your Honor. May it please the Court. My name is Adam Rosenblum, and I represent the United States. This Court should affirm the defendant's sentence and judgment if the district court properly interpreted the plain text of Application Note 4, the Guideline Section 2K2.4, and determined that it did not affect the determination of the base offense level for an underlying offense. Because Application Note 4 doesn't affect the determination of the base offense level for the underlying offense, the district court also properly determined that the base offense level on that underlying offense, the 923G count, was 18 because the relevant conduct of the offense involved a firearm described in 26 U.S.C. 5845A, namely the destructive device charged in the 2K2.4 offense. So, Mr. Rosenblum, this is Judge Wood. What concerns me is maybe the flip side of what Judge Kirsch was talking about. This Application Note, Note 4, specifically uses two different terms. It uses the term specific offense characteristic, and it uses the term enhancement. And I see no reason to assume that there's absolutely no difference between those terms. It seems to me one could read this rationally to say that when you're talking about a specific offense characteristic, you're actually talking about the offense of conviction. But if you're talking more generally about enhancements, you also can sweep in relevant conduct, for example. You sweep in what Judge Lee was talking about, the broader guidance in 1B. And I don't know why you think that the word enhancement has to mean only specific offense characteristic. Well, I think the dictionary definition of the word enhancement could include more than specific offense characteristics. And the defendant cited in the opening brief a couple of cases where it is more. Right. Well, they are. I mean, they're two different words, right? Or like a phrase versus a word. Correct. So the sentencing commission is just trying to torture us. You know, they're just saying, well, you know, let's throw in lots of words and let them figure out which ones are synonyms and which ones refer to different activity. Well, it's certainly correct that there is no definition given in the guidelines for enhancement. But I think if you look at the guidelines as a whole, you see that the commission does not use the word enhancement to describe increases to the base offense level under guidelines where there are multiple possible base offense levels. I think in this specific case, the first sentence of 2K2.4 is instructive because it says don't apply enhancements based on specific offense characteristics. For possession, brandishing, use, or discharge of an explosion. It's a very specific sentence, but then it broadens it back out. What about the note that Judge Lee mentioned? If we're in the business of looking at the guidelines as a whole, why doesn't that guide us in the direction that Ms. Christensen is advocating? Well, I think the relevant conduct guideline is certainly important here, and I think it's correct that all relevant conduct is considered, as we said in our brief,  What about the particular note, the note 2 language that Judge Lee read off? I'm not sure I understand the question then, Your Honor. I think that I agree with Judge Lee that the same analysis takes place to determine the base offense level and specific offense characteristics. I guess doesn't note 2 basically say that we should treat, that we're a base offense level, where there's more than one base offense level? For the purpose of the guidelines, we should treat kind of how we analyze that cases in the same way as we would treat specific offense characteristics and how specific offense characteristics would apply in a particular instance. So basically drawing an equivalent saying, look, these two are basically the same things, and you should treat them the same way. Isn't that what note 2 basically says? I do think that's what note 2 says, and I think that's correct for the purposes of deciding, for determining the proper base offense level and then determining whether any specific characteristics, whether the facts of relevant conduct, the facts that are included within relevant conduct, whether those support the application of a given base offense level or a specific offense characteristic. But I don't think that answers the question of does application note 4 to 2K2.4 then say, don't consider certain of those specific offense characteristics. So if we didn't have the 2K2.4 sentence, for example, here, and we only have the 922G conviction, we would look at 2K2.1 and say there was a firearm described in 5845A, so we have a higher base offense level, but we'd also apply specific enhancements based on specific offense characteristics for the presence of that destructive device and others. But listen to the equivalence that you're talking about, because what the government is saying is that there is a concern about double counting for specific offense characteristics, but there's no concern about double counting for base levels that are increased because of a specific offense characteristic. And that seems illogical. I can only argue what the text of the application note says. It may not be the best way to have crafted the application note, but the application note says, and the background to it as well, that in order to prevent double counting, we the commission are directing courts to do something specific. We're directing district courts not to apply enhancements based on specific offense characteristics to the possession, use, brandishing, or discharge of explosives or firearms. What if it said do not apply any specific offense characteristics directly or indirectly? I mean, that's kind of what we're doing, because at least for this particular statute of conviction, the difference between the 14 and the 18 is based on a specific offense characteristic. It is based on conduct that is described in a specific offense characteristic, but it is categorically different under the guidelines, but it's also a different base offense level. If you look at application note seven, the guideline 2K2.1, the 922G guideline, I think that's a very instructive application note to help resolve what the text means. There the commission says, yes, we meant what we said when we said you get a higher base offense level and specific offense characteristic enhancement for the possession of a destructive device, and the way they do that I think is very helpful to resolve this case. They say you receive the base offense level for a destructive device and the enhancement based on the specific offense characteristic applies. That's the type of language that the commission uses to distinguish between the two, and I agree with you, Judge Wood, that the conduct is exactly the same. The relevant conduct in the possession of the destructive device is the same conduct that satisfies or supports the enhancement based on the specific offense characteristic under subsection B of 2K2.1 and leads to a higher base offense level under subsection A of 2K2.1, but the commission describes them differently and directs courts to do things differently. In application note 7 of 2K2.1, the commission says receive the base offense level and the enhancement for the specific offense characteristic applies. That's not what application note 4 of 2K2.4 says, and so this court should give weight to the fact that they use different language to support the idea that the commission meant something different. They meant something specific in 2K2.4. They meant we're only talking about specific offense characteristics. Mr. Rosenblum, can I ask you a question before we run out of time regarding the background commentary for 2K2.4? The background commentary sort of sums up the application of this particular guideline section. In the last sentence of the background section, it summarizes to avoid double counting when a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic. It goes back to that language. Does that mean anything or does that not mean anything? I think that is meaningful, Your Honor. I think that is exactly the government's argument that to avoid double counting, the Sentencing Commission is directing courts to do something specific, and as you quoted from the background section, that something specific they're directing courts to do is not to apply this set of specific offense characteristics and nothing else. We should not assume they meant also higher base offense levels. I think that also resolves any possible concern about double counting here, but it's certainly not, because it doesn't reach base offense levels, it's also not a ban on double counting of conduct that affects the base offense level and conduct counted for somewhere else. So it is not an explicit ban on double counting, and that's why under this court's precedent there shouldn't be a double counting concern. If the court has no further questions, I'll ask that the court affirm the judgment and sentence of the district court. Okay, thank you, Mr. Rosenblum. Ms. Christensen, we'll give you two minutes on rebuttal. The government's argument about what would happen if Mr. Feeney had only been convicted of a 922G underscores the problem here, is that if he had only been convicted of that, he would receive a higher base offense level and all the specific offense characteristics to take into account that he had a firearm and these explosives. But 844H intends to punish the explosive conduct, and so we take that out. And this court and the guidelines say that fully accounts for the explosives. And then he still got the felon in possession, so we need to account for that as well. That's the reasoning of the base offense level cannot be based on this relevant conduct. Enhancement. There are enhancements throughout the guidelines, Chapter 3, Chapter 4 as well. Do you think whenever there's double counting in the guidelines, we should rewrite the guidelines to interpret them to preclude any double counting whatsoever? No. In fact, this court has said that unless the Sentencing Commission specifically prohibits double counting, this court can't interpret it that way. So in the background section, they say to prohibit double counting, we don't want you to apply specific offense characteristics. They don't say to prevent double counting, we don't want you to apply particular base offense levels to the extent it includes, right? So we start with weapons enhancement, and then we go to specific offense characteristics, and then we get to enhancement, just the use of the term enhancement, and then we go back to a specific offense characteristics. Yes, and the background commentary does say just specific offense characteristic. I believe it doesn't mention enhancements at all. That, of course, doesn't really go with the rest of the application. Well, it goes with the examples that they give, right, which are all specific offense characteristics. Which are all based on guidelines that don't have different base offense levels based on relevant conduct. They're all examples that are robbery. I think there's a drug-related one, so 2D and 2B. So I think it is just a matter of the commission continuously amending this application note and having language in there that it's about an enhancement. That's what the application note is about, are enhancements, and then using examples from the most common usage of those enhancements, which are, in those cases, specific offense characteristics. But there are places that sentences and offense levels are enhanced that are not specific offense characteristics. So unless there are any further questions, I'd ask the court to reverse and remand for resentencing. Thank you, Ms. Christensen. Thank you. And thank you to both counsel. The case will be taken under advisement. And before we move on to our next case.